IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BROADCAST MUSIC, INC., *et al.*,

        Plaintiffs,

    vs.                          Civil Action 2:11-CV-705
                                         Magistrate Judge King

NOLAN ENTERPRISES, INC., *et al.*,

        Defendants.

<u>**OPINION AND ORDER**</u>

    This is an action for copyright infringement under 17 U.S.C. § 101 *et seq.*, in which plaintiffs allege that defendants willfully performed or caused to be performed copyrighted compositions at Centerfold Club in Columbus, Ohio, without license or authority. This matter is now before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of *Plaintiffs' Motion for Summary Judg*ment ("*Plaintiffs' Motion*"), Doc. No. 19. *Plaintiffs' Motion* seeks injunctive relief, $20,000 in statutory damages, and reasonable attorneys' fees and costs. Defendants oppose *Plaintiffs' Motion* on the basis that they did not willfully infringe plaintiffs' copyrights. *Reply of Defendants to Plaintiffs' Motion for Summary Judgment* ("*Defendants' Response*"), Doc. No. 20. Plaintiffs have filed a reply. P*laintiffs' Reply Brief in Support of Motion for Summary Judgment* ("*Plaintiffs' Reply*"), Doc. No. 21. For the reasons that follow, *Plaintiffs' Motion* is **GRANTED**.

## I.    Background

Plaintiff Broadcast Music, Inc. ("BMI") possesses the right to license the public performances of numerous copyrighted musical compositions owned by each of the nine other plaintiffs in this action. *Declaration of John Coletta* ("*Coletta Declaration*"), Doc. No. 19-1, ¶ 2.  BMI alleges that defendants willfully performed or caused to be performed four copyrighted compositions at Centerfold Club, a "strip club" in Columbus, Ohio, on October 2, 2010, without license or authority.  Defendant Nolan Enterprises, Inc. ("Nolan Enterprises") is the legal entity that owns or controls Centerfold Club.  *Defendants' Responses to Plaintiffs' First Set of Interrogatories Propounded to Defendants,* Doc. No. 19-9, pp. 4-5;  *Defendants' Responses to Plaintiffs' First Request for Admissions to Defendants*, Doc. No. 19-9, p. 15.  Defendant Frederick Tegtmeier is the sole owner of Nolan Enterprises.  *Defendants' Responses to Plaintiffs' First Set of Interrogatories Propounded to Defendants,* Doc. No. 19-9, pp. 4-5

On October 2, 2010, Nolan Enterprises and Tegtmeier operated, maintained, and had a direct financial interest in Centerfold Club and had the right and ability to direct and control its activities.  *Defendants' Responses to Plaintiffs' First Request for Admissions to Defendants*, Doc. No. 19-9, pp. 16-17.  Tegtmeier also had the ability to supervise the persons employed by Centerfold Club.  *Id*. at p. 17.

Sometime prior to August 2008, BMI learned that defendants were offering musical entertainment at Centerfold Club without a BMI license.  *Stevens Declaration*, Doc. No. 19-3, ¶ 3.  On August 15, 2008, BMI sent a letter to Tegtmeier at Centerfold Club and advised

2

that a license was required to publically perform BMI affiliated music. *Letter Dated August 15, 2008,* Doc. No. 19-5, p. 2. From September 22, 2008 through October 6, 2010, BMI sent approximately 23 letters to defendants informing them that a license was required to publicly perform BMI copyrighted musical works. *Stevens Declaration,* ¶¶ 5-6; *Letters,* Doc. No. 19-5, pp. 3-29. In much of the correspondence, plaintiffs offered terms of a license that would authorize the public performance of BMI's music at Centerfold Club. *See id.* at pp. 3-29. Letters sent on April 30 and October 6, 2010 directed defendants to cease and desist all use of BMI licensed music at Centerfold Club. *Id.* at pp. 25, 29; *Stevens Declaration,* ¶ 6. In addition to the letters sent to defendants, BMI's licensing personnel telephoned Centerfold Club on seventy-nine occasions and visited the club on four occasions. *Stevens Declaration,* ¶¶ 8-9. Defendants did not respond to plaintiffs' letters, *see id.* at ¶ 5; *Letter Dated February 11, 2011,* Doc. No. 19-5, p. 34, and at no time have defendants entered into a licensing agreement with BMI. *Defendants' Responses to Plaintiffs' First Request for Admissions to Defendants,* Doc. No. 19-9, p. 22; *Defendants' Response,* pp. 1-2.

On October 2, 2010, plaintiffs sent an investigator, Scott Farkas, to Centerfold Club to make an audio recording and written report of the music being publicly performed at that establishment. *Stevens Declaration,* ¶ 11. According to plaintiffs, that investigation revealed that defendants publicly performed four BMI copyrighted music works on that date. *Id.; Certified Infringement Report,* Doc. No. 19-4. Plaintiffs advised defendants of their

3

investigation by a letter dated February 2, 2011 and offered to resolve the matter by entering into a license agreement in exchange for payment of outstanding licensing fees and costs of investigation in the amount of $5,208.16. *Letter Dated February 2, 2011*, Doc. No. 19-5, p. 30; *Stevens Declaration*, ¶ 12.

According to Lawrence E. Stevens, Assistant Vice President of General Licensing for BMI, "[h]ad the [d]efendants entered into an agreement at the time BMI first contacted them in August 2008, the blanket license fees from August 1, 2008 through September 30, 2012 would have been approximately $6,951.88; and the blanket license fees for the year commencing October 1, 2012 will be approximately $2,012.50." *Stevens Declaration*, ¶ 16.

## II.  Standard

The standard for summary judgment is well established.  This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The judgment sought shall be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Pursuant to Rule 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact." *Id*.  In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## III. Discussion

### A.    Infringement

To establish a claim for copyright infringement of a musical work by means of public performance, a claimant must prove: (1) the originality and authorship of a composition; (2) a valid copyright under the formalities of

5

the Copyright Act; (3) claimant's ownership of the copyright at issue; (4) defendant's public performance of the composition; and (5) defendant's failure to obtain permission from the claimant for such performance.

*Jobete Music Co., Inc. v. Johnson Communc'ns, Inc.*, 285 F.Supp.2d 1077, 1082 (S.D. Ohio 2003) (citing *Varry White Music. V. Banana Joe's of Akron, Inc.*, No. 5:01CV1074, 2002 WL 32026609 (N.D. Ohio Oct. 28, 2002)). *See also Superhype Pub., Inc. v. Vasiliou*, 838 F.Supp. 1220, 1224 (S.D. Ohio 1993).

Plaintiffs have submitted the declaration of John Coletta, BMI's Vice President of Legal Affairs, to establish the first three elements of their claim. *Coletta Declaration*, Doc. No. 19-1. Attached to Mr. Coletta's declaration is a list of the musical works allegedly infringed, registration certificates issued by the United States Copyright Office for the musical works, and documentation relating to the chain of ownership of each copyrighted work. *See id.*, pp. 19-2. Defendants have not disputed this evidence, nor have they otherwise created a genuine issue of material fact regarding plaintiffs' ownership of valid copyrights in the songs at issue in this litigation. Plaintiffs have therefore established their ownership of valid copyrights in the four songs allegedly infringed. *See* 17 U.S.C. § 410(c).

As to the fourth element, plaintiffs have submitted a *"Certified Infringement Report"* as evidence that defendants publicly performed plaintiff's copyrighted works. *Certified Infringement Report*, Doc. No. 19-4. The *Certified Infringement Report* was prepared by Scott Farkas, who visited Centerfold Club on October 2, 2010 and who documents that BMI works were publicly performed at that

establishment. *Id.*; *Stevens Declaration*, ¶ 11. Again, defendants have presented no contradictory evidence in their response to *Plaintiffs' Motion*. Therefore, the Court finds that the "public performance" element of plaintiffs' claims has been satisfied.

Finally, plaintiffs allege, and defendants concede, that they did not have a BMI license to publicly perform the copyrighted music on October 2, 2010. *See Defendants' Responses to Plaintiffs' First Request for Admissions to Defendants*, Doc. p. 22; *Defendants' Response*, pp. 1-2. Accordingly, there is no genuine issue of material fact regarding the fifth element of plaintiffs' claims.

Defendants offer no evidence, nor do they make any argument, contesting the alleged infringements. *See Defendants' Response*, pp. 1-6. Instead, defendants appear to argue that the alleged infringement was not done "willfully" or with knowledge. *See id*. at pp. 1, 3, 4 ("The alleged infringement has not been willful . . . ."). The only evidence offered by defendants is the affidavit of Tegtmeier, who avers that, "[a]t no time has [Nolan Enterprises or Tegtmeier] willfully disregarded or infringed on copyrights. . . . [Nolan Enterprises] is willing to pay [a] commercially reasonable licensing fee." *Tegtmeier Affidavit*, attached to *Defendants' Response*, at ¶ 3. This evidence is insufficient to create a genuine issue of material fact regarding plaintiffs' copyright infringement claims.

**B. Liability**

Having concluded that plaintiffs established unlawful infringement, the Court now turns to the issue of defendants' liability. Plaintiffs argue that Nolan Enterprises and Tegtmeier are

jointly and severally liable for infringement at Centerfold Club. *Plaintiffs' Motion*, p. 15-17. Defendants appear to argue that they are not liable for the infringement because they had no knowledge of the particular music played on October 2, 2012. *See Defendants' Response*, p. 3.

In *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), the United States Supreme Court observed that

> [t]he Copyright Act does not expressly render anyone liable
> for infringement committed by another. . . . [However,]
> vicarious liability is imposed in virtually all areas of
> the law, and the concept of contributory infringement is
> merely a species of the broader problem of identifying the
> circumstances in which it is just to hold one individual
> accountable for the actions of another.

*Id*. at 434-435. Accordingly, Nolan Enterprises, as the entity that operated, maintained, had a direct financial interest in, and had the right and ability to direct and control the activities of Centerfold Club on October 2, 2010, *see* Doc. No. 19-9, pp. 15-17, is liable for the infringement, regardless of whether it had knowledge of the music actually played on that date. *See Broadcast Music, Inc. v. Branham*, No. C-1-80-124, 1982 WL 1271, at *2 (S.D. Ohio July 8, 1982) (citing *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 157 (1975) ("The entrepreneur who sponsors such a public performance for profit is also an infringer . . . .").

As to Tegtmeier, "[c]ourts within virtually every circuit, including the Sixth Circuit, have adopted a two-prong test to determine whether a corporate officer is jointly and severally liable with the corporation for copyright infringement." *Broadcast Music, Inc. v. Rooster's Inc.*, No. 04-140-DLB, 2006 WL 335583, at *3 (E.D.

Ky. Feb. 14, 2006) (citing *Jobete Music Co.*, 285 F.Supp.2d at 1083).
*See also Broadcast Music, Inc. v. H.S.I., Inc.*, No. C2-06-482, 2007 WL
4207901, at *3 (S.D. Ohio Nov. 26, 2007) (quoting *Metro-Goldwyn-Mayer
Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).  On
October 2, 2010, Tegtmeier operated, maintained, had a direct
financial interest in, had the ability to direct and control the
activities of, and had the ability to supervise the persons employed
by Centerfold Club on that date.  *See* Doc. No. 19-9, pp. 15-17.
Tegtmeier is therefore also vicariously liable for the infringement of
plaintiffs' copyrights that occurred at Centerfold Club on that date.

### C.    Injunctive Relief

Plaintiffs request that the Court enjoin defendants from further
unauthorized public performances of BMI's copyrighted music, pursuant
to 17 U.S.C. § 502.  *Plaintiffs' Motion*, pp. 1, 9-10.  Defendants
argue that plaintiffs are not entitled to an injunction because money
damages are adequate and because "music is an integral part" of the
operation of a "strip club;" to grant the injunctive relief requested
by plaintiffs, defendants argue, will force Centerfold Club to close.
*Defendants' Response*, pp. 3-4.

The Copyright Act authorizes a court to order temporary or final
injunctive relief as a remedy for infringement "on such terms as it
may deem reasonable to prevent or restrain infringement of a
copyright."  17 U.S.C. § 502(a).  It is well established "that a
showing of past infringement and a substantial likelihood of future
infringement justifies issuance of a permanent injunction."
*Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 492 (6th

Cir. 2007) (citations and quotations omitted).  "Not only is the issuance of a permanent injunction justified 'when a copyright plaintiff has established a threat of continuing infringement, he is *entitled* to an injunction.'"  *Id.* (emphasis in original) (quoting *Walt Disney Co. v. Powell*, 897 F.2d 565, 567 (D.C. Cir. 1990)).  Otherwise, awarding damages without injunctive relief would amount to a "'forced license to use the creative work of another.'"  *Id.* (quoting *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004)).

In the case presently before the Court, plaintiffs have established past infringement on the part of defendants.  Further, defendants have persistently disregarded plaintiffs' invocation of their rights and of plaintiffs' offer to license their works.  *See also Defendants' Response*, pp. 2-3 ("First, almost all of the telephone calls and correspondence occurred before the October 2, 2010 on-site inspection by BMI.").  Under these circumstances, the Court concludes that there is a substantial likelihood of future infringement.  *See Broadcast Music, Inc. v. Pub Dayton, LLC*, No. 3:11-cv-58, 2011 WL 2118228, at *2-3 (S.D. Ohio May 27, 2011).

Accordingly, plaintiffs are entitled to an injunction enjoining defendants from publicly performing BMI's copyrighted music without a license.

###### D.   **Statutory Damages**

Plaintiffs also seek statutory damages of $5,000 for each of the four claimed infringements.  *Plaintiffs' Motion*, p. 16.  The Copyright Act permits plaintiffs to seek statutory damages in lieu of actual damages attributable to the infringement.  17 U.S.C. § 504(a)-(c).

Statutory damages for each individual act of infringement can be no less than $750 and no more than $30,000. 17 U.S.C. § 504(c)(1). Where the copyright owner establishes willful infringement, the Court may increase the award of statutory damages to $150,000. 17 U.S.C. § 504(c)(2). "The Court has substantial discretion to set statutory damages within the permitted range, but it is not without guidance." *H.S.I., Inc.*, 2007 WL 4207901 at *4 (citing *Douglas v. Cunningham*, 294 U.S. 207, 210 (1935)). When determining the proper amount of statutory damages, "'courts have looked to: (1) whether [d]efendants' infringement was willful, knowing, or innocent; (2) [d]efendants' profit from infringement; (3) [p]laintiffs' loss from infringement; and (4) deterring future violations by [d]efendants and similarly situated entities.'" *Broadcast Music, Inc. v. 4737 Dixie Highway, LLC*, No. 1:12-cv-506, 2012 WL 4794052, at *4 (S.D. Ohio Oct. 9, 2012) (quoting *H.S.I., Inc.*, 2007 WL 4207901 at *6).

The parties first dispute whether defendants willfully infringed plaintiffs' copyrights. In an action for copyright infringement,

> "willfully" means with knowledge that the defendant's conduct constitutes copyright infringement. Otherwise, there would be no point in providing specially for the reduction of minimum awards in the case of innocent infringement, because any infringement that was nonwillful would necessarily be innocent. This seems to mean, then, that one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not "willful" for these purposes.

*Princeton Univ. Press v. Mich. Document Serv., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996) (citations omitted).

This is a case of willful infringement. Beginning in August 2008, BMI sent defendants more than twenty letters, called Centerfold

Club 79 times, and sent representatives to the club on four occasions, demanding that defendants secure a license in order to lawfully perform BMI's copyrighted music. *Stevens Declaration*, ¶¶ 5-9.  BMI also directed defendants on April 30 and October 6, 2010 to cease and desist all use of BMI licensed music at Centerfold Club.  Doc. No. 19-5, pp. 25, 29; *Stevens Declaration*, ¶ 6.  Defendants assert that the Centerfold Club's day shift manager was responsible for collecting the mail, that the club has a high rate of employee turnover, and that Tegtmeier does not start work until late in the evening.  *Defendants' Response*, p. 12.  Defendants do not, however, deny that they received these communications.  Instead, defendants argue that BMI's communications sent before October 2, 2010, *i.e.,* the date of the infringements at issue in this case, are a "mitigating" factor in calculating statutory damages.  *Defendants' Response*, p. 5.  To the contrary, defendants' receipt of these communications before the date of the claimed infringements demonstrates that the infringement was in fact willful.  *See 4737 Dixie Highway, LLC*, 2012 WL 4794052 at *3; *H.S.I., Inc.*, 2007 WL 4207901 at *5; *Broadcast Music, Inc. v. Leyland Co., LLC*, No. 5:11CV2264, 2012 WL 5879838, at *9 (N.D. Ohio Nov. 21, 2012); *Pub Dayton, LLC*, 2011 WL 2118228 at *3.

With regard to profits and losses associated with the infringements, plaintiffs have established $6,951.88 in lost licensing fees from August 1, 2008 through September 30, 2012.  *Stevens Declaration*, ¶ 16.  Although defendants argue that plaintiffs lost no licensing fees prior to October 2, 2010, *see Defendants' Response*, p. 4, the Court concludes that plaintiffs have sufficiently established

defendants' costs savings as well as plaintiffs' loss.  *See 4737 Dixie Highway, LLC*, 2012 WL 4794052 at *3; *Pub Dayton, LLC*, 2011 WL 2118228 at *3-4.

As to the amount of the award, "'in the narrow class of cases dealing with willful, unauthorized, musical performances in public establishments, the damages awards range from two times the licensing fee to five times the licensing fee.'"  *4737 Dixie Highway, LLC*, 2012 WL 4794052 at *4 (quoting *Broadcast Music, Inc. v. DeGallo, Inc.*, 872 F.Supp. 167, 169 (D.N.J. 1995)).  "In fact, cases within this Circuit have recognized that the method of awarding statutory damages based 'on some multiple of unpaid fees is more appropriate than measuring damages by the number of infringements.'"  *Id.* (quoting *H.S.I., Inc.*, 2007 WL 4207901 at *6 (awarding "statutory damages of three times the unpaid fees").

Plaintiffs' request for statutory damages of $5,000 per infringement, for a total award of $20,000, is less than three times the amount of plaintiffs' lost licensing fees.  Defendants suggest, however, that the Court should award an amount equal to the unpaid licensing fees or $750 - $1,000 per infringement.  *Defendants' Response*, p. 4.  The Court rejects this suggestion as insufficient.  "If the Copyright Act is 'to have any effect, judgment against defendant must be appreciably more than the amount he would have had to expend to obtain appropriate permission.'"  *H.S.I., Inc.*, 2007 WL 4207901 at *6 (quoting *Music City Music v. Alfa Foods, Ltd.*, 616 F.Supp. 1001, 1003 (E.D. Va. 1985)).  "Defendants 'should be put on notice that it costs less to obey the copyright laws than to violate

13

them.'" *Id.* (quoting *Rodgers v. Eighty Four Lumber Co.*, 623 F.Supp. 889, 892 (W.D. Pa. 1985)). Defendants were on notice for two years that the public performance of BMI-licensed music without license or permission constituted copyright infringement. Defendants nevertheless refused to secure a license.

Accordingly, the Court **AWARDS** plaintiffs statutory damages in the amount of $20,000, which constitutes an award of $5,000 for each of the four claimed infringements. This amount properly accounts for defendants' gain, plaintiffs' loss, and the interest of the Copyright Act in deterring future violations.

### E. Attorneys' Fees and Costs

Finally, plaintiffs seek an award of reasonable attorneys' fees and costs. *Plaintiffs' Motion*, p. 16. The Court is vested with the discretion to award fees to the prevailing party in a copyright infringement action. 17 U.S.C. § 505. The United States Court of Appeals for the Sixth Circuit has set forth a series of factors to consider in determining whether to award attorney fees, including such factors as "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 589 (6th Cir. 2007) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). "The grant of fees and costs 'is the rule rather than the exception and they should be awarded routinely.'" *Bridgeport Music, Inc. v. WB Music Corp.*, 520

F.3d 588, 592 (6th Cir. 2008) (quoting *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 380 (5th Cir. 2004)).

In the case presently before the Court, defendants willfully infringed plaintiffs' statutory rights despite numerous warnings that a license was required in order to publicly perform BMI works. Accordingly, plaintiffs are entitled to an award of their reasonable attorneys' fees and costs.

"It is well settled law that the 'lodestar' approach is the proper method for determining the amount of reasonable attorneys' fees." *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986)). The lodestar approach multiplies the number of hours reasonably spent by a reasonable hourly rate. *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). There is a "strong presumption" that this figure is a reasonable fee. *Id.* (quoting *Delaware Valley*, 478 U.S. at 565).

The *Declaration of Ronald H. Isroff* ("*Isroff Declaration*"), Doc. No. 19-6, itemizes attorneys' fees in the amount of $14,905.50[1] and expenses in the amount of $465.41, for a total of $15,370.91. *Isroff Declaration*, pp. 11-12. According to the *Isroff Declaration*, attorneys Ronald Isroff and Christie Watchorn charged an hourly rate in 2011 of $455 and $280, respectively. *Id.* at ¶ 16. In 2012,

---

[1] $14,905.50 represents the total amount billed by attorneys Isroff, Watchorn, and Thrush. *Isroff Declaration*, pp. 11-12. Attorney Isroff billed $8,845.50 for 11.90 hours in 2011 and 7.30 hours in 2012. *Id.* Attorney Watchorn billed $5,576.00 for 5.10 hours in 2011 and 13.60 hours in 2012. *Id.* Attorney Corey billed $484.00 for 2.20 hours in 2012. *Id.*

attorneys Isroff, Watchorn, and Corey Thrush charged at hourly rates of $470, $305, and $220, respectively. *Id.* The *Isroff Declaration* avers that these fees and costs were

> reasonable and necessary to advance [p]laintiffs'
> interest in this matter given the level of experience
> of the lawyers, the time and labor required in light
> of the fees customarily charged in this locality for
> similar legal services.

*Id.* at ¶ 17. Although defendants characterize Mr. Isroff's rate as unreasonable, *Defendants' Response*, p. 6, defendants offer no evidence in support of this characterization or controverting plaintiff's evidence in this regard. Therefore, the Court concludes that plaintiffs are entitled to attorneys' fees and costs, pursuant to 17 U.S.C. § 505, in the amount of $15,370.91.

**WHEREFORE**, based on the foregoing, *Plaintiffs' Motion for Summary Judgm*ent, Doc. No. 19, is **GRANTED**.

Defendants are **PERMANENTLY ENJOINED** from publicly performing BMI's copyrighted music without a license.

Plaintiffs are **AWARDED** statutory damages in the amount of $20,000.

Plaintiffs are **AWARDED** attorneys' fees and costs in the amount of $15,370.91.

The Clerk shall enter **FINAL JUDGMENT** in favor of plaintiffs.


January 11, 2013                          ____*s/Norah McCann King*_____
                                                Norah M^cCann King
                                         United States Magistrate Judge